SO ORDERED: May 1, 2014.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| DAVID S. McCARTY and | ) |
| DIANNA K. McCARTY, | ) Case No. 12-10779-JMC-7A |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| DAVID WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 13-50004 |
| | ) |
| DAVID S. McCARTY and | ) |
| DIANNA K. McCARTY, | ) |
| | ) |
| Defendants. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for a bench trial on February 6, 2014.  Plaintiff David Williams ("Williams") appeared by counsel Mark A. Miller ("Miller").  Defendants David S. McCarty ("David") and Dianna K. McCarty ("Dianna" and together with David, the

"McCartys") appeared by counsel Bryce D. Owens. At the conclusion of the trial, the Court took the matter under advisement with the parties invited to submit post-trial briefs.

The Court, having reviewed the evidence presented at the trial, the Debtor's Trial Brief filed by the McCartys on October 11, 2013 (Docket Nos. 19-22), the Post Trial Brief In Support Of Plaintiff/Creditor David Williams filed on February 20, 2014 (Docket No. 36) (the "Williams Post-Trial Brief"), the Post Trial Brief In Support of Debtor, David S. McCarty filed on February 26, 2014 (Docket No. 37), and the other matters of record in this adversary proceeding; having heard the presentations of counsel at the trial; and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052, and rules on all motions pending as of the date of trial.

## Findings of Fact

The Court makes the following findings of fact:

1. On September 10, 2012, the McCartys filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

2. On January 8, 2013, the McCartys received their general discharge.

3. On January 7, 2013, Williams timely filed a Complaint To Determine Dischargeability Of A Debt Pursuant To 11 U.S.C. § 523 (Docket No. 1) (the "Complaint"), wherein Williams alleges that the McCartys owe a Judgment Debt (as defined below) to Williams that is nondischargeable under §§ 523(a)(2)(A) and/or (a)(6).

---

[1] All statutory references herein are to the Bankruptcy Code unless otherwise noted.

4.      On February 25, 2013, the McCartys each filed an Answer, Affirmative Defense And Counterclaim (Docket Nos. 6 and 7).  The counterclaims ("Counterclaims") seek costs and reasonable attorney's fees pursuant to § 523(d).

5.      On March 25, 2013, the McCartys each filed a Motion For Sanctions Pursuant To Trial Rule 11 (Docket Nos. 8 and 9) (collectively, the "Motions for Sanctions") alleging that the Complaint was filed without legal or factual basis and to harass and unnecessarily increase the McCartys' litigation costs.

6.      On May 13, 2013, Williams' counsel filed a Response To Defendants' Counsel's Motions For Sanctions (Docket No. 15) (the "Sanctions Response") opposing the relief sought in the Motions for Sanctions.  Williams did not file a reply to the Counterclaims.

7.      Sometime in March 2011, a fire broke out at Williams' house at 6220 Windsor, Indianapolis, Indiana 46219 (the "House").  The fire caused significant damage to the first story of the House and caused smoke damage to the second story.  Williams was insured against fire damage.

8.      With respect to repairing the fire damage to the House, Williams came into contact with David, a principal of the general contractor firm D&D Services, LLC ("D&D").

9.      David is D&D's sole member/owner.  D&D was formed as an Indiana limited liability company in 2008 and had its office in the McCartys' home.  D&D stopped operating in 2012 at approximately the time the McCartys filed their bankruptcy petition.  D&D had three employees at the time David met Williams.

10.     Although D&D stands for "David and Dianna," Dianna has never been employed by D&D.  She did not participate in forming D&D, nor is she a member of D&D.  Dianna's name is on D&D's bank account, and she wrote checks to pay D&D's employees from that

account.  She has never been on any D&D job site, including the House.  Williams testified that he had never met or spoken with Dianna prior to the trial, that he did not enter into a contract with Dianna, and that Dianna did not take anything from him or damage any of his property.

11. David testified he had done "all sorts of home improvement" jobs and that he had previously remodeled a basement and performed snow removal services.

12. David maintained commercial liability insurance for D&D.  D&D was not licensed or bonded.  David testified that he did not believe that the State of Indiana requires general contractors to be licensed or bonded.

13. David testified that he is not familiar with the Indiana statutes applicable to home improvement contracts (Ind. Code § 24-5-11 *et seq.*) or home improvement fraud (Ind. Code § 35-43-6 *et seq.*).  David further testified that he was not aware that violation of those statutes may constitute a "deceptive act" or a class D felony, respectively.

14. According to Williams, David represented at their first meeting that D&D was licensed, bonded, and insured.  David denied telling Williams that D&D was licensed or bonded.  Neither party is more credible on this point.

15. On or about May 2, 2011, Williams accepted the proposal presented by D&D for repairs to the House.  Because Williams' fire insurer did not approve D&D's proposal, the parties agreed to rewrite it.

16. On May 6, 2011, Williams accepted the amended proposal presented by D&D for repairs to the Home (the "Contract"), which was satisfactory to Williams' fire insurer.  The Contract specified the work D&D was to complete, the price for such work, and the payment

draw schedule.[2] It further provided that Williams was responsible to pay for trash dumpsters. The Contract did not provide approximate start or completion dates for the project.

17. David testified that D&D subcontracted some of its work, including roofing and work that requires a license, such as electrical and plumbing work. D&D did not disclose in the Contract the subcontractors it intended to use at the House.

18. On June 16, 2011, Williams paid D&D $10,000 (the "Payment") to begin work on the House, which is inconsistent with David's testimony as to the amount of the first draw. No further payments were made.

19. A number of facts regarding performance under the Contract are disputed. Williams and David gave contradictory testimony regarding:

    a. Who paid for the dumpster(s), with each stating that he had.

    b. When work was done, with Williams claiming D&D worked the day prior to receiving the Payment; and David claiming D&D started work immediately after receiving the Payment.

    c. How long D&D worked on the House, with Williams testifying that D&D worked 2-3 hours on one day; and David testifying that D&D worked sun-up to sun-down for 2-2 ½ weeks.

    d. What work was done, with Williams claiming that D&D helped Williams remove four to six items from the House, including a couch, love seat, and an entertainment system, and put them in the dumpster; and David claiming that D&D started demolition, removed furniture and other fire-damaged personal property from the

---

[2] The timing of the draw schedule was included in the Contract, but the amount of each draw was not. David's testimony as to the draw schedule was inconsistent with the terms of the Contract.

House, and removed dry wall to the point that concealed termite damage and deterioration was exposed.

  e.  Why D&D did not complete work under the Contract, with Williams claiming that, other than the removal of a few items prior to receipt of the Payment, D&D did no work under the Contract which forced him to hire another contractor; and David testifying that D&D stopped work because Williams would not advance additional funds. Neither party is more credible on these points.

20. Williams testified that, with respect to whatever work D&D performed at the House, D&D did not damage the House. No claim was made against D&D's liability insurance.

21. On February 7, 2012, Williams filed a complaint in the Marion Superior Court (the "State Court") against D&D and David alleging breach of contract, unjust enrichment, intentional misrepresentation, fraud, theft, breach of Indiana's Home Improvement Contract Statute, and home improvement fraud.

22. On June 4, 2012, the State Court entered a default judgment (the "Default Judgment") against D&D and David in the amount of $10,147.00 plus interest at a rate of 9% per annum (the "Judgment Debt").

## Conclusions of Law

1. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The Default Judgment does not preclude this Court's review. "For collateral estoppel to apply, four elements must be met: '(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.' " *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (quoting *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir. 1990)). Because no issue was actually litigated in the State Court, the State Court made no findings *per se* in the Default Judgment, and there is no identity of issues between the State Court case and this adversary proceeding, this Court is not estopped from considering the merits of this adversary proceeding.[3]

6.      Based on the evidence presented, and in particular the findings of fact in ¶ 10 above and the fact that the Default Judgment was not entered against Dianna (she was not a party in the State Court case), the Court concluded, and announced at the trial, that Dianna would be and hereby is dismissed from this adversary proceeding.

7.      Exceptions to discharge under § 523 "are to be [construed] strictly against a creditor and liberally in favor of the debtor." *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). "The burden is on the objecting creditor to prove exceptions to discharge." *Id.* (citation omitted). The burden of proof required is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

### § 523(a)(2)(A)

8.      Section 523(a) provides, in relevant part:

---

[3]      At the conclusion of the trial, the Court invited the parties to address the issue of collateral estoppel in their respective post-trial briefs. Williams did not accept that invitation; the McCartys argued that collateral estoppel does not apply.

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud … .

9. The Seventh Circuit has noted material differences among the three possible grounds for nondischargeability under § 523(a)(2)(A) and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud." *See Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 699-700 (Bankr. N.D. Ill. 2002) (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)).

10. To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theories, a creditor must prove all of the following elements: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

11. "What constitutes 'false pretenses' in the context of § 523(a)(2)(A) has been defined as 'implied misrepresentations or conduct intended to create and foster a false impression.'" *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr. N.D. Ill. 1995) (internal quotations omitted)). "False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* at 928 (citation omitted).

12.     A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct. *Deady v. Hanson (In re Hanson),* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010) (citing *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001)). "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Id.* (citing *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). "An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact." *Scarpello*, 272 B.R. at 700 (citing *Jairath*, 259 B.R. at 314).

13.     Justifiable reliance is an intermediate level of reliance which is less stringent than "reasonable reliance" but more stringent than "reliance in fact." *See Field v. Mans*, 516 U.S. 59, 72-73, 116 S.Ct. 437, 445 (1995). Justifiable reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id.* at 71 (quotations omitted). Justifiable reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id.* (quotation omitted).

14.     A debtor's intent to deceive for purposes of the false pretenses and false representation prongs on § 523(a)(2)(A) "is measured by a debtor's subjective intention at the time the representation was made." *Scarpello*, 272 B.R. at 700 (citing *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998)). "Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances." *Hanson*, 432 B.R. at 773 (internal citations omitted).

15. "[A]ctual fraud is broader than misrepresentation," *McClellan*, 217 F.3d at 893, in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Scarpello*, 272 B.R. at 700 (citing *McClellan*, 217 F.3d at 894). "Actual fraud" is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (internal citations omitted). In such cases, a creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Hanson*, 432 B.R. at 772 (citing *McClellan*, 217 F.3d at 894).

16. "[T]he focus of an 'actual fraud' claim is on the defendant's state of mind at the time of his purportedly fraudulent conduct." *Merritt v. Wiszniewski (In re Wiszniewski)*, 2010 WL 3488960 at *5 (Bankr. N.D. Ill. 2010) (citation omitted).

17. The Court concludes that there is insufficient evidence to except the Judgment Debt from David's discharge pursuant to § 523(a)(2)(A). The common element among the standards for evaluating false pretenses, false representation and actual fraud is scienter – the intent to deceive/defraud. Williams did not prove by a preponderance of the evidence that David had the requisite intent.

18. The findings of fact in ¶¶ 14 and 19 above present two different views of how one construction job played out, and the evidence seems to have focused on whether the Contract was breached and by whom. "[F]ailure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud." *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) (emphasis in original). *See also Rezin v. Barr (In re Barr)*,

194 B.R. 1009, 1017 (Bankr. N.D. Ill. 1996) (citation omitted) ("Failure to fulfill a contractual obligation by itself does not establish a misrepresentation for purposes of § 523(a)(2)(A)"); *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988) (citation omitted) ("a mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A)"); 4 *Collier on Bankruptcy,* ¶ 523.08, p. 523-45 – 523-46 (16th ed.).  There is no direct evidence that David, on behalf of D&D, entered into the Contract with the intent of never complying with its terms.  In fact, while there is a dispute as to the details, both parties agree that D&D performed *some* work at the House.  The Court is not able to infer fraudulent intent from looking at the surrounding circumstances as described by the evidence, particularly because of the "he said, he said" nature of the testimony and the Court's finding that neither Williams nor David was more credible than the other with respect to work done or not done under the Contract.  Because Williams has not proved intent to deceive/defraud by a preponderance of the evidence, the Judgment Debt cannot be excepted from David's discharge pursuant to any of the theories of § 523(a)(2)(A).

19. Williams alleges separately that he can prevail under § 523(a)(2)(A) as a matter of law because David and/or D&D violated the Indiana Home Improvement Contracts Act (HICA), Ind. Code § 24-5-11 *et seq.*, and by committing statutory home improvement fraud.  Ind. Code § 35-43-6 *et seq.*  Williams did not cite case law in support of his position.

   a. In the Williams Post-Trial Brief, Williams alleges a violation of HICA because the Contract lacks:  "(4) A reasonably detailed description of the proposed home improvements.  (5) … a statement that the specifications will be provided to [Williams] before commencing any work and that the [Contract] is subject to [Williams'] separate written and dated approval of the specifications.  (6) The approximate starting and

completion dates of the home improvements. (7) A statement of any contingencies that would materially change the approximate completion date." Ind. Code § 24-5-11-10(a)(4)-(7). Violations are characterized as "deceptive" acts. Ind. Code § 24-5-11-14. Upon reading the relevant statute, the Court does not find the requirement of scienter for an act to be characterized as "deceptive" under the Indiana statute.[4] Even if a deceptive act was technically committed, without evidence that it was committed with the intent to deceive or defraud (a necessity under all three grounds for nondischargeability under § 523(a)(2)(A)), such act does not meet the requirements for excepting a debt from discharge under § 523(a)(2)(A).[5] In this adversary proceeding, there is no proof that the Contract was written with the intent to deceive/defraud Williams. Though the Court does not rule as a matter of law that a deceptive act under HICA will never support a conclusion of nondischargeability under § 523(a)(2)(A), Williams has not met his burden of proof for that argument in this adversary proceeding.

      b.      Also in the Williams Post-Trial Brief, Williams narrows his argument for home improvement fraud to Ind. Code § 35-43-6-12(a)(9)(b): "A home improvement supplier [D&D] who enters into a home improvement contract [the Contract] and knowingly … falsely claims to a consumer [Williams] that [D&D] … is licensed, certified or insured … commits home improvement fraud, a Class B misdemeanor, except as provided in section 13 of this chapter." Williams testified that David represented to Williams that D&D was licensed and bonded, yet David denied making that

---

[4] This reading is bolstered by the differentiation in penalties that may be assessed when a "deceptive act" as compared to a "*willful* deceptive act" is committed. *See* Ind. Code § 24-5-0.5-4(a) (emphasis added).

[5] *See Reeves v. Davis (In re Davis)*, 638 F.3d 549 (7th Cir. 2011). In that case, a creditor sought a determination that a state court judgment she was awarded against a contractor based on the contractor's violation of HICA was not dischargeable under § 523(a)(2)(A). The Seventh Circuit affirmed a bankruptcy court's factual finding regarding lack of intent, which the bankruptcy court made because the state court did not include findings in its judgment as to the contractor's intent.

representation. The Court found neither witness more credible than the other. Findings of Fact, ¶ 14. Therefore, the factual basis for home improvement fraud was not shown by a preponderance of the evidence. Absent such factual basis, the Court need not reach the legal question as to whether a finding of home improvement fraud is sufficient to except a debt from discharge under § 523(a)(2)(A).

20. Because Williams has not met his burden of proof, the Judgment Debt is not excepted from David's discharge pursuant to § 523(a)(2)(A).

## § 523(a)(6)

21. A debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" may be excepted from discharge pursuant to § 523(a)(6). "Bankruptcy courts in [the Seventh Circuit] have focused on three points: (1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citations omitted).

22. Injury "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.' The injury need not have been suffered directly by the creditor asserting the claim. The creditor's claim must, however, derive from the other's injury." *Id.* (internal citations omitted).

23. "Willfulness requires 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998) (emphasis in original)). " 'Willfulness' can be found either if the 'debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury.' " *Id.* (quotation omitted).

24. Maliciousness requires the debtor to act "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quotation omitted). The Seventh Circuit recently reaffirmed its definition of maliciousness from *Thirtyacre* as good law. *Horsfall*, 738 F.3d at 774-75.

25. In the Williams Post-Trial Brief, Williams advances an implied or constructive malice theory to support his § 523(a)(6) claim, relying solely on *Littlefield v. McGuffey (In re Malcolm McGuffey a/k/a Wally Mack)*, 145 B.R. 582 (Bankr. N.D. Ill. 1992). The Court need not reach that issue because the willfulness element necessary to prevail under § 523(a)(6), like the intent element required under § 523(a)(2)(A), is not supported by the evidence. Williams did not prove that David deliberately or intentionally injured him, nor did Williams prove David's motive was to injure him. Without the requisite scienter, the Court cannot except the Judgment Debt from David's discharge under § 523(a)(6).

26. Therefore, the Judgment Debt is not excepted from David's discharge pursuant to § 523(a)(6).

## Counterclaims

27. The McCartys counterclaimed, seeking their costs and reasonable attorney's fees pursuant to § 523(d), which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

28. "The legislative history reflects that the purpose of this subsection is to discourage creditors from bringing actions in hope of obtaining a settlement from an honest debtor anxious

to save attorney's fees. It was enacted to correct creditor practices that violated the spirit of the bankruptcy code by preventing a consumer debtor from getting a fresh start." *Mfrs. Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 219 (N.D. Ill. 1987) (internal citation omitted).

29. The Court questions whether the Judgment Debt is a "consumer debt," which is defined in § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." Because the Judgment Debt arose from D&D's business transaction with Williams, it arguably falls outside the purview of § 523(d).

30. However, neither party argued that the Judgment Debt was not a consumer debt. Therefore, the Court will address whether Williams' position was substantially justified.

> The standard for substantial justification is whether a position has 'a reasonable basis both in law and fact.' *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). That standard applies under § 523(d). *In re Hunt,* 238 F.3d 1098, 1103 (9th Cir. 2001).

*Alliant Credit Union v. Baptiste (In re Baptiste)*, 2010 WL 3834607 at *1 (Bankr. N.D. Ill. 2010).

31. The Court concludes that Williams was substantially justified in his position. His testimony, including that David made false representations that D&D was licensed, bonded, and insured, provided a reasonable factual basis for Williams' claims. HICA and other state law provided a reasonable legal basis for Williams' claims.

32. Therefore, the Court affirms its ruling announced during the trial and hereby grants judgment in favor of Williams on the Counterclaims.

### Motions for Sanctions

33. The McCartys have moved for sanctions against Williams' counsel under "Trial Rule 11." The analogous rule in this Court is Fed. R. Bankr. P. 9011.

34. In relevant part, Fed. R. Bankr. P. 9011(b) provides:

> By presenting to the court ... a pleading ... , an attorney … is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

35. With regard to a request for sanctions under Fed. R. Bankr. P. 9011,

> The bankruptcy court asked precisely the right question – not whether the claim itself was frivolous or nonfrivolous, but whether [the attorney] conducted an adequate inquiry into the facts and the law before he filed the claim. In *Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 932 (7th Cir. 1989) (en banc), this Court recently stated that examination of the reasonableness of an attorney's inquiry "focuses on inputs rather than outputs, conduct rather than result." *Id.* (citing Stephen B. Burbank, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11,* 10-25 (American Judicature Society 1989)).

*Matter of Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir. 1992). The standard is "an objective question of reasonableness under the circumstances." *In re Chicago Midwest Donut, Inc.*, 82 B.R. 943, 948 (Bankr. N.D. Ill. 1988) (citations omitted).

36. At the trial, there was a dearth of evidence regarding the adequacy or reasonableness of Miller's inquiry prior to filing the Complaint, so the Court has also reviewed the arguments made in the Sanctions Response and other matters of record in this adversary proceeding. At minimum, it appears that Miller reviewed the State Court case, attended the § 341 meeting of creditors, and questioned and/or listened to the questioning of the McCartys under oath at that meeting prior to filing the Complaint on Williams' behalf. The Court finds this to be a reasonable effort on Miller's part given the circumstances of this adversary

proceeding. That Williams did not prevail does not change the analysis because of the "focu[s] on inputs rather than outputs, conduct rather than result." Prosecuting the claims in this adversary proceeding was not "frivolous," and the Court does not find Miller's conduct to be sanctionable.

37.　　Therefore, the Court affirms its ruling announced during the trial and hereby DENIES the Motions for Sanctions.

**Conclusion**

Based on the foregoing, the Court hereby:

A.　　DISMISSES Dianna from this adversary proceeding with prejudice.

B.　　Concludes that Williams has not proven by a preponderance of the evidence that the Judgment Debt should be excepted pursuant to § 523(a)(2)(A) or § 523(a)(6) from David's general discharge under § 727, and therefore enters Judgment in favor of David on the Complaint and determines that the Judgment Debt owed by David to Williams is DISCHARGEABLE.

C.　　Concludes that Williams was substantially justified in his position, and therefore enters Judgment in favor of Williams on the § 523(d) Counterclaims.

D.　　DENIES the Motions for Sanctions.

The Court will enter judgment consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #